United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VINCENT MICHAEL LOPRIORE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 18-CV-06970-LHK<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 18 |

Vincent Lopriore ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act. Before the Court are Plaintiff's motion for summary judgment, ECF No. 17, and the Commissioner's cross-motion for summary judgment, ECF No. 18. Having considered the parties' briefs, the relevant law, and the record in this case, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

# I. BACKGROUND

### A. Plaintiff's Age, Education and Vocational Background, and Claimed Disability

Plaintiff was born on March 25, 1975. Administrative Record ("AR") 47. Plaintiff reported that he only completed tenth grade and never graduated high school. AR 517. Plaintiff last maintained significant employment while working as a waste treatment operator for the United States Department of Agriculture, where he was provided accommodations due to his difficulties with reading. AR 88-90, 102. Plaintiff's work history also includes janitorial work and a variety of odd jobs. AR 88-90. Plaintiff alleges he is disabled due to a left scaphoid wrist fracture, osteoarthritis, joint pain, lumbar degenerative disc disease, chronic lumbar pain, depression, anxiety, bipolar disorder, and post-traumatic stress disorder (PTSD). See ECF No. 18 at 2. Additional facts are discussed as necessary in the analysis.

### B. Procedural History

Plaintiff filed applications for disability insurance benefits and supplemental security income on July 22, 2014. AR 110, 126. In both applications, Plaintiff alleged that he became disabled on January 12, 2014. AR 111, 127. On October 28, 2014, the Social Security Administration denied Plaintiff's applications for disability insurance benefits and supplemental security income. AR 176-80, 181-86. On January 6, 2015, the Social Security Administration denied both of Plaintiff's applications upon reconsideration. AR 189.

Plaintiff timely requested a hearing on February 5, 2015. AR 197. An initial hearing date of November 3, 2016 before an Administrative Law Judge ("ALJ") was continued to March 30, 2017 to allow for additional time to supplement the medical record and to secure the testimony of a medical expert. AR 23. Plaintiff testified at the March 30, 2017 hearing and was represented by an attorney. AR 85-93. An impartial medical expert and an impartial vocational expert also testified. AR 93-97, 98-108. The ALJ left the record open after the March 30, 2017 hearing so that Plaintiff could obtain additional medical records. AR 108-09.

On May 23, 2017, the ALJ issued a partially favorable written decision that found that Plaintiff was disabled within the meaning of the Social Security Act from January 12, 2014 through April 30, 2016. AR 23, 27-33. The ALJ, however, found that medical improvement

2

occurred as of May 1, 2016 such that Plaintiff had the residual functional capacity to perform a light range of work that exists in significant numbers within the national economy, and therefore, denied benefits for the period beginning May 1, 2016 and onward. AR 23-24, 33-37. After Plaintiff filed a timely request for review of the ALJ's decision on July 27, 2017, AR 302-03, the Appeals Council denied review on September 14, 2018, and the ALJ's decision became the final decision of the Commissioner, AR 1-4. The Appeals Council stated "[i]f you disagree with our action, you may ask for court review of the Administrative Law Judge's decision by filing a civil action." AR 2.

On November 16, 2018, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. ECF No. 1. On April 15, 2019, the Commissioner filed an answer. ECF No. 12. On June 12, 2019, Plaintiff filed a motion for summary judgment. ECF No. 17 ("Plaintiff's Mot."). On July 10, 2019, the Commissioner filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment. ECF No. 18 ("Commissioner's Mot."). Plaintiff filed a reply on July 23, 2019. ECF No. 19 ("Reply").

## II.     LEGAL STANDARD

### A.  Standard of Review

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Morgan*, 169 F.3d at 599. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating

3

a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins*, 466 F.3d at 882).

### B. Standard for Determining Disability

An individual is considered disabled for the purposes of Title II and Title XVI of the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The physical or mental impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

"ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. If not, the analysis proceeds to step two. At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If not, the claimant is not disabled. If so, the analysis proceeds to step three. At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or equals an impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four. At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. If not, the analysis proceeds to step five. At step five, the ALJ determines whether the claimant can perform other jobs in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

"The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray*, 554 F.3d at 1222. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

## III. DISCUSSION

Plaintiff asserts that the ALJ committed four errors. First, Plaintiff argues that the ALJ erred in determining that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence. Plaintiff's Mot. at 4-7. Second, Plaintiff contends that the ALJ erred in failing to give proper weight to the medical evidence. *Id.* at 7-15. Third, Plaintiff asserts that the ALJ erred in concluding that Plaintiff did not meet Listings 12.04 or 12.06 at Step Three of the sequential evaluation process. *Id.* at 15-16. Fourth, Plaintiff argues that substantial evidence does not support the ALJ's assessment of Plaintiff's residual functional capacity. *Id.* at 16-18. The Court first summarizes the relevant evidence and the ALJ's opinion before determining whether the ALJ erred. Because Plaintiff's third and fourth arguments are dependent on Plaintiff's first and second arguments, the Court addresses each of Plaintiff's arguments in the order presented.

### A. Relevant Evidence

The Court first discusses the evidence concerning Plaintiff's alleged psychological impairments. Then, the Court briefly discusses Plaintiff's alleged physical impairments.

#### 1. Psychological Impairments

##### a. Non-Examining Physician Lesleigh Franklin, Ph.D. and Dionne Childs, M.S.

Following a period of homelessness, Plaintiff became housed, obtained health insurance, and entered treatment at Highland General Hospital and the Bay Area Family Institute in 2014. AR 461, 516. On July 23, 2014, Plaintiff met with Dionne Childs, M.S., who assessed Plaintiff's psychological capabilities. AR 516. At the July 23, 2014 meeting, Plaintiff told Ms. Childs that

5

Plaintiff was not taking any psychiatric medication. AR 518. Dr. Lesleigh Franklin, Ph.D., was

Ms. Childs's supervisor. Although Dr. Franklin was not present at the July 23, 2014 meeting and

Ms. Childs's opinion was based exclusively on the July 23, 2014 meeting, the opinion of Ms.

Childs was issued jointly with Dr. Franklin.

Among other things, the joint opinion noted that Plaintiff "was oriented to person, place,

year, month, season, and day of the week, but not to the date." AR 518. Plaintiff, however,

"endorsed manic symptoms: elevated mood, decreased need for sleep, pressured speech, racing

thoughts, distractibility, increased goal oriented activity and behavior with a high risk of

consequences." AR 521. Plaintiff also endorsed "symptoms related to Posttraumatic Stress

Disorder." AR 521. The joint opinion diagnosed Plaintiff with bipolar disorder; PTSD;

obsessive-compulsive disorder; and academic, relational, and occupational problems. AR 522.

The joint opinion qualified the diagnosis by explaining that "the results of the evaluation are

limited in scope by the records available, the time of the evaluation, and the client's self report."

AR 521. The joint opinion noted that "Plaintiff's cognitive and neuropsychological impairments

. . . might be roadblocks to his being able to maintain a position in a job." AR 522.

### b. Patricia Jones, MFT

From September 2014 to November 2015, Plaintiff participated in therapy with the East

Bay Family Institute, where he was seen by Patricia Jones, a marriage and family therapist intern.

AR 557-60. Ms. Jones's "progress notes" from this period include a paragraph on subjective

observations, objective observations, Ms. Jones's assessment, and plan for future therapy. AR

557-60. Ms. Jones observed that Plaintiff felt "victimized" and "resentful" on multiple occasions.

AR 557-58. In the "objective" observation sections, Ms. Jones noted that Plaintiff "was dressed

and groomed appropriately," that Plaintiff "showed signs of aggravation and depression," and that

Plaintiff "still falls short when it comes to holding in his angry outburst but he is aware of it and is

attempting to find ways of coping with the negativity going on in his head." AR 558-59. On other

occasions, however, Ms. Jones's notes appear to report "subjective" observations as "objective"

ones, including that Plaintiff "reported getting better at recognizing [his] anger triggers" and that Plaintiff "reported that his wife and children are starting to feel uncomfortable around him at times." AR 558-59.

On November 3, 2015, Ms. Jones completed a check-box mental impairment questionnaire that categorized Plaintiff as having numerous marked or extreme impairments for work-related activities. AR 554-56. Ms. Jones noted that Plaintiff exhibits "antisocial behavior" and is "[e]xtremely angry and frustrated with the world and everything in it." AR 556. Ms. Jones also noted "symptoms of major [d]epressive [d]isorder and PTSD." AR 556.

### c. Kaiser Medical Records

In 2015, Plaintiff transferred his care to Kaiser, where he saw a primary care physician, a psychotherapist, and a psychiatrist. *See, e.g.*, AR 461, 561-64, 573-74, 577-78, 605.

At an initial meeting with his Kaiser primary care physician, Plaintiff requested psychotherapy. AR 564. On February 4, 2015, Plaintiff met with Lance Friis, M.F.T., a marriage and family therapist, and "complain[ed] of anxiety including excessive worry, restlessness, muscle tension, hypervigilance, somatic complaints." AR 577. Friis noted that Plaintiff "listed depression as an issue, but then spoke primarily about anxiety." AR 578. Friis also noted that Plaintiff "[r]uminates on things, can't stay still, [is] easily agitated, [has] sleep disturbance," has a [l]ong trauma history," and possesses "[s]ymptoms of PTSD." AR 578. Nonetheless, Plaintiff's behavior appeared normal, his thought process was logical, he was fully oriented, had intact recent and remote memory, and possessed good insight and judgment. AR 579. Friis suggested a treatment plan involving individual psychotherapy and group therapy, and referred Plaintiff for medication management. AR 580. Kaiser's records indicate that Plaintiff took part in group and individual therapy sessions. *See* AR 608, 625, 631. During this time, Plaintiff was also prescribed medication to treat his insomnia and back pain. AR 617, 647.

### d. Treating Psychologist Dr. John Frederick Hiatt, M.D.

On May 29, 2015, Plaintiff met with psychologist Dr. John Frederick Hiatt, M.D. AR 655.

United States District Court
Northern District of California

Dr. Hiatt observed that Plaintiff appeared well-groomed and had a pleasant and cooperative demeanor. AR 657. Plaintiff's insight and judgment were marked as "good," and Dr. Hiatt noted that Plaintiff's attention and concentration were "within normal limits." AR 657. At the same time, Dr. Hiatt also noted that Plaintiff was fidgety, dysphoric, and anxious. AR 657. Dr. Hiatt made an assessment that Plaintiff had "dyscontrol issues" and was "[c]urrently experiencing increased anxiety [and] volatility" such that "[a] mood stabilizer seem[ed] the most appropriate route." AR 658. Dr. Hiatt also diagnosed Plaintiff with PTSD, and prescribed Plaintiff with lamotrigine and lorazepam to treat Plaintiff's anxiety issues. AR 658, 663. According to treatment notes, the medication helped stabilize Plaintiff's mental symptoms for a period of time. AR 899-901.

On March 31, 2016, following the suicide of his brother-in-law and a physical altercation with a neighbor, Plaintiff had another appointment with Dr. Hiatt. AR 899. Plaintiff was tearful, fidgety, and depressed, but had "fair" impulse control and possessed normal attention and concentration. AR 900. Plaintiff complained of depression and insomnia and that since Plaintiff's last visit, his "symptoms of mood disorder and insomnia [had] significantly worsened." AR 899-900. Plaintiff noted that one or two months prior to the March 31, 2016 appointment, Plaintiff had run out of medication for a few days and developed serious difficulty sleeping. AR 899. Plaintiff refilled his medication, "but did not recover his former stability." AR 899. Dr. Hiatt noted that Plaintiff "denies medication side effects with poor medication compliance." AR 900. Dr. Hiatt diagnosed Plaintiff with a "major return of PTSD" and "depression with associated anxiety and irritability," and prescribed "restart[ing] [medication] at higher levels" before "consider[ing] [additional new medication] after a week." AR 901.

### e. Sabrina Estell, MFT

In 2016 and 2017, Plaintiff also received psychotherapy treatment from Sabrina Estell, a marriage and family therapist intern. AR 727-31, 1019-20. On October 28, 2016, Ms. Estell, utilizing a check-box form, found that Plaintiff had "marked" limitations in the following seven

Case No. 18-CV-06970-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

areas: (1) remembering work-like procedures, (2) working in coordination with or proximity to others without being unduly distracted, (3) performing at a consistent pace without an unreasonable number and length of rest periods, (4) accepting instructions and responding appropriately to criticism from supervisors, (5) dealing with normal work stress, (6) interacting appropriately with the general public, and (7) maintaining socially appropriate behavior. AR 729-30. As part of the check-box form, Ms. Estell also noted that Plaintiff "experiences PTSD symptoms which include but are not limited to: difficulty [in] focusing, concentrating, managing anger and mood swings, persistent anxiety, flashbacks, intense psychological distress, heightened arousal, fatigue, as well as frequent pain." AR 731.

On March 15, 2017, Ms. Estell again assessed Plaintiff's level of impairment for work-related activities. Ms. Estell, again utilizing a check-box form, found that Plaintiff exhibited "marked" impairments in 12 areas related to work-related mental abilities. AR 1019. The mental impairment check-box questionnaire included two sections asking the reviewer to describe the patient's impairments. Ms. Estell answered, "Please refer back to previous mental impairment questionnaire" in response to these sections. AR 1020.

### f. State Agency Physicians

Plaintiff's medical records were examined by two State agency medical providers, physicians R. Ferrell, M.D., and Paula Kresser, Ph.D. On October 14, 2014, Dr. Ferrell reviewed the record and found that Plaintiff could perform simple tasks with no limitations in social functioning. In other categories relevant to an individual's ability to perform sustained work activities, Dr. Ferrell found that Plaintiff did not have significant limitations or was only moderately limited in areas such as, *inter alia*, the ability to understand and remember very short and simple instructions, the ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, and the ability to make simple work-related decisions. AR 137-39.

On January 2, 2015, Dr. Kresser also reviewed the record and made similar findings. AR

152-54. Dr. Kresser found that Plaintiff could perform "simple tasks with minimal or superficial interaction with others." AR 153. Dr. Kresser noted that Plaintiff had adaptation limitations, but only insignificant or moderate limitations in categories such as the ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain an ordinary routine without special supervision, and the ability to make simple work-related decisions. AR 152-53.

### 2. Physical Impairments

Plaintiff has a left scaphoid wrist fracture, slight right-wrist osteoarthritis, and lumbar degenerative disc disease. AR 27; *see also, e.g.*, AR 471, 561-63, 593, 646, 676-78. However, the Court does not discuss Plaintiff's physical impairments at length because they are not the subject of the summary judgment motions. Rather, Plaintiff challenges the ALJ's findings regarding Plaintiff's mental impairments.

## B. The ALJ's Decision

On May 23, 2017, the ALJ filed a partially favorable written decision that awarded Plaintiff a closed period of benefits from January 12, 2014 to April 30, 2016, but denied benefits for the period beginning May 1, 2016 and onward. AR 20-43.

### 1. January 12, 2014 to April 30, 2016

The ALJ applied the five-step evaluation process for determining disability described in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 12, 2014, the alleged onset date. AR 27. At step two, the ALJ found that from January 12, 2014 through April 30, 2016, Plaintiff "had the following severe impairments: left scaphoid wrist fracture, slight osteoarthritis of the right wrist, lumbar degenerative disc disease, obesity, depression, and anxiety/posttraumatic stress disorder." AR 27. At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 27.

United States District Court
Northern District of California

Before moving on to step four, the ALJ assigned the following RFC, which accounted for Plaintiff's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence:

> [T]he claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). With his non-dominant left hand, he could occasionally handle and finger; with his right upper extremity, he could frequently handle and finger; he could not climb ladders, ropes, or scaffolds, but could occasionally balance, stoop, crouch, kneel, crawl, and use ramps/stairs; he could perform simple repetitive tasks not requiring interaction with the public.

AR 29. In arriving at this conclusion regarding Plaintiff's RFC, the ALJ summarized and weighed the medical evidence and Plaintiff's subjective symptom testimony. AR 29-31. The ALJ noted that Plaintiff alleged that bone injuries, PTSD, and learning disorders limited his ability to work. AR 29. The ALJ also explained that Plaintiff "reported difficulty sleeping and feeling anxious and irritable most days." AR 29. According to Plaintiff, "symptoms and resulting limitations either prevent [Plaintiff] from performing or make it difficult for him to perform his usual activities of daily living, such as preparing meals, taking care of his personal needs, completing household chores, doing laundry, shopping, sleeping, driving, and doing yard work." AR 29. The ALJ concluded that Plaintiff's alleged symptoms were "reasonably consistent with the medical evidence and other evidence in the record. Specifically, the medical findings support the existence of limitations as reflected in" the RFC assigned to Plaintiff. AR 30.

The ALJ began the analysis of Plaintiff's RFC by explaining Plaintiff's physical impairments. AR 30. The ALJ found that there was "evidence of a scaphoid wrist fracture, which developed into non-union," "[o]steoarthritis of the right wrist," "[l]umbar degenerative disc disease [with] multiple levels of degeneration with disc protrusion," and problems associated with obesity. AR 30.

The ALJ then turned to assessing Plaintiff's mental impairments. Citing to Plaintiff's medical and psychiatric records from Kaiser, the ALJ first noted that "objective evidence supports the diagnoses of depression, anxiety, and arguably posttraumatic stress disorder." AR 30. At the same time, the ALJ found that Plaintiff "never received inpatient treatment or psychiatric

hospitalization," and instead participated in "conservative treatment in the form of medication and therapy." AR 30. The ALJ determined that "[c]linical findings include dysphoric and anxious mood with congruent affect, disorganized thought process, [and] marginal impulse control," but that there were also "many normal or unremarkable clinical findings," including "evidence of normal mood and affect, well-groomed, normal behavior, unremarkable thought content, goal oriented thought process, age appropriate fund of knowledge, attention and concentration within normal limits, no evidence of delusions or hallucinations, and good insight and judgment." AR 30.

The ALJ then accorded "great weight" to the State agency mental health providers, "who opined [Plaintiff's] mental health conditions would limit him to simple tasks with minimal or superficial interaction with others." AR 31. Though the ALJ found that these assessments were "generally consistent with the findings upon exam and treatment history," the ALJ nonetheless granted Plaintiff "the benefit of doubt" and included an additional limitation of no public interaction, a limitation that the State agency mental health providers had not assigned. AR 31.

At step four, for the period from January 12, 2014 to April 30, 2016, the ALJ found that Plaintiff could not perform his past relevant work. AR 31. At step five, again for the period from January 12, 2014 to April 30, 2016, the ALJ—considering Plaintiff's age, education, work experience, and RFC—concluded that "there were no jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." AR 32. The vocational expert ("VE") found that given all of Plaintiff's attributes, there were two light unskilled representative jobs in the national economy that Plaintiff could have performed, but the ALJ found that "both jobs obviously require[d] interaction with the public" such that "[e]ven th[ose] jobs [were] excluded." AR 32-33. Accordingly, the ALJ determined that Plaintiff was disabled for the purposes of the Social Security Act from January 12, 2014 through April 30, 2016.

### 2. May 1, 2016 and onward

However, for the period from May 1, 2016 and onward, the ALJ concluded that Plaintiff

12

was not disabled for the purposes of the Social Security Act. Specifically, prior to step four and in regards to Plaintiff's mental impairments, the ALJ found that there was some evidence that Plaintiff "experienced some improvement in depressive symptoms," but that as a whole, Plaintiff "continued to have symptoms of anxiety and perhaps PTSD" and that "the record does not demonstrate any worsening." AR 33. At the same time, the ALJ also determined that "after the closed period [ending on April 30, 2016,] there is little medical evidence [regarding Plaintiff's mental impairments]." AR 28. The ALJ found that Plaintiff "continued with conservative outpatient treatment and medication," and that "[w]hile there [were] a few abnormal exam findings, most mental status exams from May 2016 and ongoing d[id] not support any additional functional limitations. AR 33. As a result, the ALJ adopted his earlier findings and analysis regarding Plaintiff's mental impairments. AR 33.

Nonetheless, the ALJ found that Plaintiff was no longer disabled because Plaintiff "underwent physical therapy, which improved the functioning of his left wrist" and "symptoms improved." AR 34. According to the ALJ, these physical improvements led to an increase in Plaintiff's RFC such that Plaintiff could use both upper extremities frequently in all modalities. AR 34. Furthermore, while the ALJ determined that Plaintiff still could not climb ladders, ropes, or scaffolds, the ALJ found that Plaintiff could now occasionally balance, stoop, crouch, kneel, crawl, and use ramps and stairs. AR 34. The ALJ also noted that as long as tasks did not require interaction with the public, Plaintiff could perform simple repetitive tasks. AR 34.

As relevant for the instant motions, the ALJ accorded great weight to the assessments of State agency physicians that Plaintiff could perform a light range of work because those assessments were consistent with the record as a whole. AR 35. The ALJ accorded little weight to Ms. Estell's October 28, 2016 and March 15, 2017 assessments because "[t]he extreme mental limits opined [were] not at all supported in the record and State agency doctors contradict[ed] the intern's [Ms. Estell's] opinion." The ALJ found that Ms. Estell's assessment was not supported by any objective findings or records and that Ms. Estell utilized "a check box form" that was "not

supported with a narrative" and did not "cit[e] objective findings." AR 35.

Additionally, the ALJ accorded little weight to Ms. Jones's assessments because Ms. Jones's opinions were "inconsistent with the objective records at the time" and "appear[ed] to rely primarily on [Plaintiff's] subjective complaints." AR 36. Finally, the ALJ accorded little weight to the joint opinion of Ms. Childs and Dr. Franklin. The ALJ noted that "[t]he report is not from a treating or independent source, but one engaged, it appears, by counsel." AR 36. The ALJ also concluded that the joint opinion was "inconsistent with the longitudinal evidence and presentation." AR 36. Moreover, the ALJ explained that it was discounting the joint opinion because "the exam was conducted during a period in which [Plaintiff] was not taking any psychotropic medication." AR 36.

At step four, for the period May 1, 2016 and onward, the ALJ found that Plaintiff could not perform his past relevant work. AR 36. At step five, the ALJ found that beginning May 1, 2016, and considering Plaintiff's age, education, work experience, and RFC, there were "jobs that exist in significant numbers in the national economy that [Plaintiff] [could] perform." AR 36. Relying on VE testimony, the ALJ concluded that Plaintiff was capable of performing the requirements of representative occupations such as routing clerk, can filling and closing machine tender, hand rolling machine operator, and apple packing header. AR 37. Accordingly, Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy," and therefore, for the period from May 1, 2016 and onward, the ALJ determined that Plaintiff was not disabled for the purposes of the Social Security Act. AR 37.

**C. Analysis**

As stated above, Plaintiff asserts that the ALJ committed four errors. First, the ALJ allegedly erred in determining that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence. Second, Plaintiff contends that the ALJ erred in failing to give proper weight to the medical evidence. Third, Plaintiff asserts that the ALJ erred in concluding that Plaintiff did not meet Listings 12.04 or 12.06

at Step Three of the sequential evaluation process. Fourth, Plaintiff argues that substantial evidence does not support the ALJ's assessment of Plaintiff's residual functional capacity. *Id*. at 16-18. The Court addresses each of Plaintiff's arguments in the order presented.

### 1. Whether the ALJ Erred in Determining Plaintiff's Statements Regarding His Symptoms Were Inconsistent with the Medical Evidence

Plaintiff argues that the ALJ erred when finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms from his mental impairments were not fully supported by evidence in the record. Plaintiff's Mot. at 4; AR 34. In particular, Plaintiff contends that the ALJ erred by (1) characterizing Plaintiff's treatment history as "conservative" and (2) not fully developing the record after concluding that there was "little medical evidence" of mental health impairments after the closed period from January 2014 to April 2016. *See* AR 28, 30, 33.

When there is no affirmative evidence of malingering, as is the case here, instead of reviewing for substantial evidence, the ALJ's reasons for rejecting a claimant's testimony about the severity of his symptoms must be "clear and convincing." *Trevizo*, 871 F.3d at 678. When reviewing for clear and convincing reasons to reject a claimant's testimony, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The Court finds that insofar as the ALJ did reject Plaintiff's testimony about the severity of his mental symptoms, the ALJ's reasons for doing so are clear and convincing.

### a. Plaintiff's Medication Management and Therapy Qualify as "Conservative Treatment"

The ALJ determined that "objective evidence supports the diagnoses of depression, anxiety, and arguably posttraumatic stress disorder." AR 30. At the same time, the ALJ found that Plaintiff "never received inpatient treatment or psychiatric hospitalization," and instead participated in "conservative treatment in the form of medication and therapy." AR 30. The ALJ determined that "[c]linical findings include dysphoric and anxious mood with congruent affect,

15

disorganized thought process, [and] marginal impulse control," but that there were also "many normal or unremarkable clinical findings," including "evidence of normal mood and affect, well-groomed, normal behavior, unremarkable thought content, goal oriented thought process, age appropriate fund of knowledge, attention and concentration within normal limits, no evidence of delusions or hallucinations, and good insight and judgment." AR 30.

On this basis, Plaintiff asserts that the ALJ improperly discounted Plaintiff's mental impairments based on the erroneous "expectation that one must be hospitalized or receiving inpatient care in order to be considered suffering from disabling conditions." Plaintiff's Mot. at 5. Plaintiff's argument is not well-taken.

To begin, the ALJ determined that "[Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of [his mental] symptoms [were] generally consistent with the evidence." AR 31. Indeed, "in an abundance of caution," the ALJ credited Plaintiff's statements regarding his mental impairments; declined to follow the medical opinions of State agency physicians, who found Plaintiff could execute simple tasks with minimal or superficial interaction with others; and precluded Plaintiff from any work entailing interaction with the public. AR 31. From the ALJ's own decision, it is not entirely clear that the ALJ in fact rejected Plaintiff's subjective allegations as Plaintiff contends.

Nonetheless, in any event, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *Wennet v. Saul*, 777 Fed. App'x 875, 877 (9th Cir. 2019) (same). Plaintiff claims that "regular therapy and medication management with an increase in medication" should not be characterized as "conservative treatment," Plaintiff's Mot. at 4, but courts have reached the opposite conclusion. Here, as in other cases, "Plaintiff was never hospitalized for [his] mental problems, but instead medical providers prescribed and recommended medication [and] therapy." *Ayala-Salamat v. Berrihill*, 2017 WL 2968737, at *15 (N.D. Cal. July 12, 2017); *Holaday v. Colvin*, 2016 WL

880971, at *11 (E.D. Cal. Mar. 8, 2016) (holding that a plaintiff's treatment involving prescribed medication and therapy sessions was conservative). Indeed, following a period of using medication, Plaintiff's mental symptoms improved.[1] AR 699 (noting that Plaintiff reported that "[s]ince he started taking Lamictal, he feels he is in a much better space," that "[p]atient demonstrated a much more relaxed mood than in previous sessions," and that Plaintiff reported that "since the last visit[,] [his] symptoms have been improved"); AR 899-901 (noting that Plaintiff only "became unstable after a brief period off med[ication]").

Accordingly, the ALJ did not err by characterizing Plaintiff's treatment history as "conservative." Insofar as the ALJ discounted Plaintiff's testimony, Plaintiff's conservative treatment was a clear and convincing reason to do so.

### b. The ALJ Fulfilled His Duty to Develop the Record for the Period Starting May 1, 2016

Plaintiff next argues that the ALJ improperly concluded that there was "little medical evidence" of mental health impairments after the closed period from January 2014 to April 2016 such that the ALJ's conclusion regarding the intensity, persistence, and limiting effects of his mental symptoms was erroneous. In particular, Plaintiff contends that his counsel "made a reasonable effort to obtain additional mental health treatment records but experienced unforeseeable difficulty in obtaining such records." Plaintiff's Mot. at 6. Plaintiff contends that the ALJ's knowledge of these difficulties required the ALJ to "subpoena[] the relevant records which [Plaintiff] was unable to obtain." Id. at 7. The ALJ, however, took no action and therefore, according to Plaintiff, the ALJ "failed to fulfill his duty to develop the record fully." Id.

The ALJ found that following the closed period ending on April 30, 2016, Plaintiff "experienced some improvement in depressive symptoms," "continued to have symptoms of anxiety and perhaps PTSD," and that "the record [did] not demonstrate any worsening." AR 33. At the same time, the ALJ also determined that "after the closed period [ending on April 30,

---

[1] Plaintiff's mental symptoms returned, however, after Plaintiff ran out of medication for a few days and following the suicide of Plaintiff's brother-in-law. AR 893, 899-901.

Case No. 18-CV-06970-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

2016,] there is *little medical evidence* [regarding Plaintiff's mental impairments]." AR 28 (emphasis added). The ALJ found that Plaintiff "continued with conservative outpatient treatment and medication," and that "[w]hile there [were] a few abnormal exam findings, most mental status exams from May 2016 and ongoing d[id] not support any additional functional limitations." AR 33. As a result, the ALJ adopted his earlier findings and analysis regarding Plaintiff's mental impairments during the closed period from January 12, 2014 to April 30, 2016—namely, that Plaintiff experienced depression, anxiety, PTSD, dysphoric and anxious mood with congruent affect, disorganized thought process, and marginal impulse control." AR 30, 33.

Plaintiff relies on *Tonapetyan v. Halter*, but *Tonapetyan* does not cover Plaintiff's situation. Plaintiff's Mot. at 7 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). Under *Tonapetyan*, an "ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan*, 242 F.3d at 1150 (quotation marks omitted). This duty, however, is only "trigger[ed]" when there is "[a]mbiguous evidence" or the ALJ "find[s] that the record is inadequate to allow for the proper evaluation of evidence." *Id.* Here, the ALJ did find that there was "little medical evidence" but also concluded that "most mental status exams from May 2016 and ongoing d[id] not support any additional functional limitations." AR 28, 33. This situation is different from the one in *Tonapetyan*, where the medical expert himself "recommend[ed] that a more detailed report be obtained" because it was "'difficult to say' whether the medical record was complete enough to allow the ALJ to reach a conclusion in the case." *Id.* Here, neither the ALJ nor any medical experts made "equivocations" or expressed "concern over the lack of a complete record." *Id.* at 1151; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence." (citing *Tonapetyan*, 242 F.3d at 1150)).

Moreover, in any event, even if the ALJ's duty was "trigger[ed]" by any such "[a]mbiguous evidence" or a "record [that] [was] inadequate to allow for the proper evaluation of evidence," an "ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.* at 1150 (citations omitted). In the instant case, the ALJ properly discharged that duty by "continuing the hearing" and "keeping the record open after the hearing to allow supplementation of the record." *Id.* at 1150; AR 23, 79-81, 108-09. Furthermore, the ALJ in the instant case "provided plaintiff with ample opportunity to fully develop the record," and insofar as the ALJ acknowledged that the record lacked sufficient evidence, the ALJ nonetheless gave Plaintiff "repeated opportunities to submit additional evidence" such that the burden of proof does not shift to the ALJ. *Shakhbazyan v. Colvin*, 2015 WL 4932812, at *4 (C.D. Cal. Aug. 17, 2015) ("An ALJ's acknowledgement that the record lacks sufficient evidence despite plaintiff's repeated opportunities to submit additional evidence, does not shift the burden of proof to the ALJ." (citing *Mayes*, 276 F.3d at 459)).

Accordingly, the ALJ fully discharged his duties to fully develop the record, and therefore, did not err in determining the extent of the intensity, persistence, and limiting effects of the symptoms from Plaintiff's mental impairments.

### 2. Whether the ALJ Erred in Weighing the Medical Evidence

Plaintiff's second argument asserts that the ALJ erred in failing to give proper weight to the medical evidence. Specifically, Plaintiff contends that (1) the ALJ failed to evaluate and consider the opinion evidence from Plaintiff's treating psychiatrist, Dr. Hiatt; (2) the ALJ failed to provide specific and legitimate reasons for rejecting the joint opinion of Ms. Childs, M.S., and Dr. Franklin, Ph.D.; (3) the ALJ failed to provide germane reasons for rejecting the opinion of Ms. Jones, MFTi; (4) the ALJ failed to provide germane reasons for rejecting the opinion of Ms. Estell, MFTi; and (5) the ALJ erroneously relied on State agency physicians whose opinions were allegedly inconsistent with the record. Plaintiff's Mot. at 8. The Court addresses each of

Plaintiff's contentions in turn.

**a. The ALJ Did Not Fail to Evaluate and Consider Dr. Hiatt's Opinion Evidence**

Plaintiff asserts that the ALJ overlooked Dr. Hiatt's opinions regarding Plaintiff's mental impairments. In particular, Plaintiff argues that the ALJ did not consider Dr. Hiatt's May 20, 2015 and March 31, 2016 observations that Plaintiff was fidgety, dysphoric, and anxious, AR 657; that Plaintiff had "dyscontrol issues" and was "[c]urrently experiencing increased anxiety [and] volatility" such that "[a] mood stabilizer seem[ed] the most appropriate route," AR 658; that Plaintiff was diagnosed with PTSD, and prescribed Plaintiff with lamotrigine and lorazepam to treat Plaintiff's anxiety issues, AR 658, 663; that following the suicide of his brother-in-law and a physical altercation with a neighbor, Plaintiff presented as tearful, fidgety, and depressed, AR 900; and that Plaintiff was diagnosed with a "major return of PTSD" and "depression with associated anxiety and irritability" and prescribed "restart[ing] [medication] at higher levels" before "consider[ing] [additional new medication] after a week," AR 901.

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (quoting *Bayliss v. Barnhart*,

20

427 F.3d 1211, 1216 (9th Cir. 2005)). Nonetheless, "a treating physician's opinion . . . is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan*, 242 F.3d at 1148.

To begin, the ALJ's opinion carefully noted that "some doctors did note posttraumatic stress disorder as a diagnosis" such that Plaintiff's "anxiety disorder and posttraumatic stress disorder [were] both considered in assessing [Plaintiff's] ability to function." AR 28. Therefore, it is unclear whether the ALJ actually rejected or ignored Dr. Hiatt's opinion evidence, as Plaintiff contests. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) ("It is not clear, however, that . . . the ALJ actually rejected [a medical] report.").

Furthermore, and more importantly, "[i]t is not clear . . . that [Dr. Hiatt] actually concluded that [Plaintiff] was *disabled* from post-traumatic stress disorder." *Id.* (emphasis added). "An ALJ does not err by not incorporating a physician's opinion when the physician had not 'assign[ed] any specific limitations on the claimant." *Youngblood v. Berryhill*, 734 Fed. App'x 496, 498 (9th Cir. 2018) (quoting *Turner*, 613 F.3d at 1223). As was the case in *Turner*, Dr. Hiatt's opinion evidence did not proffer "any evidence or anything that would actually confirm that [Plaintiff] could not work." *See Turner*, 613 F.3d at 1223 (internal alterations omitted). Indeed, as in *Turner*, Dr. Hiatt's May 20, 2015 and March 31, 2016 assessments "did not necessarily imply that [Plaintiff] [was] incapacitated by his post-traumatic stress disorder" because "nothing in [Dr. Hiatt's assessments] assigned any specific limitations on [Plaintiff]." *See id.* (quotation marks and internal alterations omitted); *see also Garner v. Colvin*, 626 Fed. App'x 699, 702 (9th Cir. 2015) ("Dr. Birdlebough's evidence consisted only of diagnosis and treatment notes, rather than an actual opinion regarding Garner's remaining functional abilities in the workplace.").

Accordingly, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [Dr. Hiatt's assessments] because the ALJ did not reject any of [Dr. Hiatt's] conclusions." *Turner*, 613 F.3d at 1223. Rather, [t]he ALJ incorporated [Dr. Hiatt's] observations into [Plaintiff's] residual functional capacity." *Id.* In other words, the ALJ did not fail to evaluate and consider Dr.

21

Hiatt's opinion testimony such that reversal is warranted. The Court next discusses whether the ALJ provided specific and legitimate reasons for rejecting the joint opinion of Ms. Childs and Dr. Franklin.

### b. The ALJ Provided Specific and Legitimate Reasons for According Little Weight to the Joint Opinion of Ms. Childs, M.S., and Dr. Franklin, Ph.D.

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the joint opinion of Ms. Childs, M.S., and Dr. Franklin, Ph.D. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (quotation marks omitted).

On July 23, 2014, Plaintiff met with Ms. Childs, M.S., who assessed Plaintiff's psychological capabilities. AR 516. At the July 23, 2014 meeting, Plaintiff told Ms. Childs that Plaintiff was not taking any psychiatric medication. AR 518. Dr. Franklin was Ms. Childs's supervisor. Although Dr. Franklin was not present at the July 23, 2014 meeting and Ms. Childs's opinion was based exclusively on the July 23, 2014 meeting, the opinion of Ms. Childs was issued jointly with Dr. Franklin. The joint opinion noted that Plaintiff "was oriented to person, place, year, month, season, and day of the week, but not to the date." AR 518. Plaintiff, however, "endorsed manic symptoms: elevated mood, decreased need for sleep, pressured speech, racing thoughts, distractibility, increased goal oriented activity and behavior with a high risk of consequences." AR 521. Plaintiff also endorsed "symptoms related to Posttraumatic Stress Disorder." AR 521. The joint opinion diagnosed Plaintiff with bipolar disorder; PTSD; obsessive-compulsive disorder; and academic, relational, and occupational problems. AR 522. The joint opinion qualified the diagnosis by noting that "the results of the evaluation are limited in scope by the records available, the time of the evaluation, and the client's self report." AR 521. The joint opinion noted that "Plaintiff's cognitive and neuropsychological impairments . . . might be roadblocks to his being able to maintain a position in a job." AR 522.

The ALJ assigned "little weight" to the joint opinion. The ALJ determined that (1) "[t]he

Case No. 18-CV-06970-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

report [was] not from a treating or independent source, but one engaged, it appears, by counsel," AR 36; (2) "the exam was conducted during a period in which [Plaintiff] was not taking any psychotropic medication," AR 36; and (3) the report was "inconsistent with the longitudinal evidence and presentation," AR 36.

Plaintiff argues that none of the ALJ's three reasons for discounting the joint opinion constitute a specific and legitimate reason to afford the joint opinion less weight. Plaintiff's Mot. at 13-14. At the outset, the Court notes that it agrees with Plaintiff that the fact that a claimant has been referred for examination by his or her counsel is not sufficient on its own to discredit a report. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832. The Commissioner "may introduce evidence of actual improprieties," but the Commissioner "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Id.* (quotation marks omitted).

Nonetheless, when there is substantial evidence supporting an ALJ's decision and the error does not affect the ultimate non-disability conclusion, the error is harmless. *Carmickle*, 533 F.3d at 1162 ("[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error." (citations omitted)); *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1195-97 (9th Cir. 2004). Here, the error is harmless because the ALJ's other two reasons for according little weight to the joint opinion are specific and legitimate and supported by substantial evidence.

First, substantial evidence supports the ALJ's finding that Plaintiff was not yet taking psychotropic medication at the time of the joint opinion. Plaintiff in fact told Ms. Childs on July 23, 2014 that Plaintiff was not taking any psychiatric medication. AR 518. Additionally, Plaintiff's symptoms improved when Plaintiff began taking medication following a meeting with Dr. Hiatt on May 29, 2015, but Plaintiff's symptoms flared up following a brief period off medication and following the suicide of Plaintiff's brother-in-law. AR 699 (noting that Plaintiff

United States District Court
Northern District of California

reported that "[s]ince he started taking Lamictal, he feels he is in a much better space," that "[p]atient demonstrated a much more relaxed mood than in previous sessions," and that Plaintiff reported that "since the last visit[,] [his] symptoms have been improved"); AR 899-901 (noting that Plaintiff only "became unstable after a brief period off med[ication]").

"[I]nstances where treatment and medication alleviate[] [a claimant's] symptoms" constitute "specific, clear, and convincing reasons for discounting" testimony. *Youngblood*, 734 Fed. App'x at 499. Therefore, the substantial evidence that Plaintiff's mental symptoms improved when Plaintiff used medication constitutes a specific and legitimate reason to discount the joint opinion that predated Plaintiff's use of medication. *Id.*; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Grace E.F., v. Saul*, 2019 WL 6135029, at *10 (C.D. Cal. Nov. 19, 2019) ("The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. . . . Consequently, evidence of effective treatment may provide a specific, clear, and convincing reason to discount a claimant's subjective symptom testimony." (citing *Youngblood*, 734 Fed. App'x at 499)); *Baricevic v. Comm'r of Soc. Sec.*, 2016 WL 4192415, at *4 (E.D. Cal. Aug. 9, 2016), *aff'd sub nom. Baricevic v. Berryhill*, 720 Fed. App'x 858 (9th Cir. 2018) ("It was also proper for the ALJ to consider plaintiff's positive reaction to the treatment she received." (citing *Parra*, 481 F.3d at 751)); *Ashley v. Colvin*, 2014 WL 60342, at *8 (N.D. Cal. Jan. 7, 2014) (holding that an "ALJ properly discounted opinions of physicians who met with patient early in treatment, and because plaintiff's mental health had improved" (citation omitted)).

Second, substantial evidence supports the ALJ's finding that the joint opinion was "inconsistent with the longitudinal evidence." AR 36. The ALJ determined that "[c]linical findings include dysphoric and anxious mood with congruent affect, disorganized thought process, [and] marginal impulse control," but that there were also "many normal or unremarkable clinical findings," including "evidence of normal mood and affect, well-groomed, normal behavior,

unremarkable thought content, goal oriented thought process, age appropriate fund of knowledge, attention and concentration within normal limits, no evidence of delusions or hallucinations, and good insight and judgment." AR 30.

Plaintiff's treatment notes from Kaiser confirm the ALJ's findings. AR 563 (noting that Plaintiff appeared alert, well-appearing, and in no distress and that his mental status was alert, and oriented to person, place, and time); AR 579 (finding that Plaintiff's behavior appeared normal, his thought process was logical, he was fully oriented, had intact recent and remote memory, and possessed good insight and judgment); AR 626 (noting that Plaintiff's symptoms have remained unchanged and that Plaintiff's mental status was largely normal); AR 699 (noting that Plaintiff reported that "[s]ince he started taking Lamictal, he feels he is in a much better space," that "[p]atient demonstrated a much more relaxed mood than in previous sessions," and that Plaintiff reported that "since the last visit[,] [his] symptoms have been improved"); AR 886-87 (noting that Plaintiff's symptoms were unchanged and that Plaintiff's mental status was normal).

The joint opinion, on the other hand, diagnosed Plaintiff with bipolar disorder; PTSD; obsessive-compulsive disorder; and academic, relational, and occupational problems. AR 522. Based on these findings, the joint opinion noted that "Plaintiff's cognitive and neuropsychological impairments . . . might be roadblocks to his being able to maintain a position in a job." AR 522. Finally, the joint opinion qualified the diagnosis by explaining that "the results of the evaluation are limited in scope by the records available, the time of the evaluation, and the client's self report." AR 521.

"[I]nconsistency with the medical record is a specific and legitimate reason to reject a [] physician's opinion." *Barney v. Berryhill*, 769 Fed. App'x 465, 465 (9th Cir. 2019) (quoting *Tommasetti*, 533 F.3d at 1041). Furthermore, "the one-time nature of an assessment is a valid reason to afford less weight than is afforded medical evidence found elsewhere in the record." *Everett v. Astrue*, 2012 WL 1965958, at *12 (E.D. Cal. May 31, 2012). Indeed, the fact that a physician examined a claimant "only one time and produced a brief report" can be a "specific,

United States District Court
Northern District of California

legitimate reason[] for disregarding the conclusions of" that physician.  *Matney v. Sullivan*, 981

F.2d 1016, 1020 (9th Cir. 1992); *see also Nguyen v. Barnhart*, 170 Fed. App'x 471, 472 (9th Cir.

2006) ("First, Dr. Engelhorn's opinion is entitled to less weight than those of Nguyen's treating

and examining physicians because it is conclusory, based on a single examination and is

unsupported by independent clinical findings.").  Here, substantial evidence from Plaintiff's

treatment notes indicate that the joint opinion is inconsistent with other evidence in the record.

*See, e.g.*, AR 563, 579, 626, 886-87.  Furthermore, as the joint opinion notes, "the results of the

evaluation are limited in scope by the records available, the time of the evaluation, and the client's

self report."  AR 521.

As a result, the ALJ provided specific and legitimate reasons supported by substantial

evidence for according little weight to the joint opinion.  As such, the Court finds that the ALJ did

not err by discounting the joint opinion.  The Court now analyzes whether the ALJ provided

germane reasons supported by substantial evidence for rejecting the opinion of Ms. Jones and Ms.

Estell.

### c.  The ALJ Provided Germane Reasons Supported by Substantial Evidence for Rejecting the Opinion of Ms. Jones, MFTi, and Ms. Estell, MFTi

Plaintiff contends that the ALJ failed to give germane reasons supported by substantial

evidence ("germane reasons") for discounting the opinions of Ms. Jones and Ms. Estell.  The ALJ

accorded little weight to the opinion of Ms. Jones because the opinion was "inconsistent with the

objective records" and "appear[ed] to rely primarily on the claimant's subjective complaints."  AR

36.  The ALJ granted little weight to the opinion Ms. Estell on similar grounds.  AR 35.  The ALJ

found that the record and State agency physicians contradicted Ms. Estell's opinion and that Ms.

Estell's opinion consisted of a "check box form, not supported with a narrative and not citing

objective findings."  AR 35.  These were all germane reasons to discount the opinions of Ms.

Jones and Ms. Estell.

In addition to the medical opinions of "acceptable medical sources," an ALJ must consider

the opinions of other "medical sources who are not acceptable medical sources and [the testimony]

from nonmedical sources." 20 C.F.R. § 414.1513(a). An ALJ must consider observations by "other sources" regarding how an impairment affects a claimant's ability to work, though "other sources" "are not entitled to the same deference as "acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An "ALJ may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (internal quotations and citations omitted). Inconsistency with a medical source opinion or the medical record is a germane reason to discount an "other source" opinion. *Cachu v. Colvin*, 2015 WL 5232524, at *5 (E.D. Cal. Sept. 8, 2015) (citing *Ball v. Colvin*, 607 Fed. App'x 709, 710 (9th Cir. 2015); *see also Molina*, 674 F.3d at 1112 (concluding that an inconsistency between an "other source" and an "acceptable medical source" was a germane reason to discount the "other source" opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence is one such [germane] reason."). If an "other source" opinion utilizes a "standardized, check-the-box form" without "supporting reasoning or clinical findings," that is another germane reason to afford less weight to an "other source" opinion. *Molina*, 674 F.3d at 1112. Furthermore, "rel[ying] too heavily on [a claimant's] subjective complaints" provides yet another "germane reason[] for discounting" an opinion. *Hall v. Berryhill*, 717 Fed. App'x 708, 710 (9th Cir. 2017).

### i. Ms. Jones's Opinion

Here, Ms. Jones's "progress notes" from September 2014 to November 2015 include a paragraph on subjective observations, objective observations, Ms. Jones's assessment, and plan for future therapy. AR 557-60. In the "objective" observation sections, Ms. Jones noted that Plaintiff "was dressed and groomed appropriately," that Plaintiff "showed signs of aggravation and depression," and that Plaintiff "still falls short when it comes to holding in his angry outburst but he is aware of it and is attempting to find ways of coping with the negativity going on in his head." AR 558-59. On other occasions, however, Ms. Jones's notes appear to report "subjective" observations as "objective" ones, including that Plaintiff "reported getting better at recognizing

[his] anger triggers" and that Plaintiff "reported that his wife and children are starting to feel uncomfortable around him at times." AR 558-59. This fact suggests that Ms. Jones "relied too heavily on [Plaintiff's] subjective complaints" and that Ms. Jones's progress notes should be discounted, just as the ALJ concluded. *Hall*, 717 Fed. App'x at 710; AR 36.

This conclusion is buttressed by the fact that Ms. Jones's notes are inconsistent with medical source opinion and medical records. *Molina*, 674 F.3d at 1112 (concluding that an inconsistency between an "other source" and an "acceptable medical source" was a germane reason to discount the "other source" opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence is one such [germane] reason.").

Ms. Jones's opinion categorized Plaintiff as having numerous marked or extreme impairments for work-related activities. AR 554-56. Ms. Jones noted that Plaintiff exhibits "antisocial behavior" and is "[e]xtremely angry and frustrated with the world and everything in it." AR 556. Ms. Jones also concluded that Plaintiff would have marked limitations in making simple work-related decisions, maintaining attention for two hour segments, and completing a normal workday and workweek without interruptions from psychologically based symptoms. AR 555. Indeed, Ms. Jones's opinion goes further than Dr. Hiatt's treatment notes in opining on the severity of Plaintiff's PTSD. *See* AR 555-56, 655-58, 899-901.

Both State agency physicians disagreed with Ms. Jones's opinion, AR 28, 138-39, 153-54, and the ALJ was entitled to afford greater weight to the opinions of State agency physicians because they were acceptable medical sources and Ms. Jones was not, *Hayes v. Berryhill*, 721 Fed. App'x 648, 651 (9th Cir. 2018) (holding that an inconsistency with a physician's opinion was a germane reason to discount the opinion of a vocational counselor); *Robinson*, 690 Fed. App'x at 524 (determining that germane reasons to discount "other source" opinions include inconsistency with an opinion provided by an "acceptable medical source"). Dr. Ferrell reviewed the record and found that Plaintiff could perform simple tasks with no limitations in social functioning. In other categories relevant to an individual's ability to performed sustained work activities, Dr. Ferrell

Case No. 18-CV-06970-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

found that Plaintiff did not have significant limitations or was only moderately limited in areas such as, *inter alia*, the ability to understand and remember very short and simple instructions, the ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, and the ability to make simple work-related decisions. AR 137-39.

Dr. Kresser also reviewed the record and made similar findings. AR 152-54. Dr. Kresser found that Plaintiff could perform "simple tasks with minimal or superficial interaction with others." AR 153. Dr. Kresser noted that Plaintiff had adaptation limitations, but only insignificant or moderate limitations in categories such as the ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain an ordinary routine without special supervision, and the ability to make simple work-related decisions. AR 152-53.

Additionally, as noted previously, Plaintiff's treatment notes from Kaiser include, as the ALJ found, evidence of normal mood and affect, well-groomed, normal behavior, unremarkable thought content, goal oriented thought process, age appropriate fund of knowledge, attention and concentration within normal limits, no evidence of delusions or hallucinations, and good insight and judgment. *See* AR 30, AR 563, 579, 626, 886-87; *Bayliss*, 427 F.3d at 1218 ("Inconsistency with medical evidence is one such [germane] reason.").

Accordingly, the ALJ provided germane reasons for according little weight to Ms. Jones's opinion.

### ii. Ms. Estell's Opinion

In 2016 and 2017, Plaintiff received psychotherapy treatment from Ms. Estell, also a marriage and family therapist intern. AR 727-31, 1019-20. On October 28, 2016, Ms. Estell, utilizing a check-box form, found that Plaintiff had "marked" limitations in the following seven areas: (1) remembering work-like procedures, (2) working in coordination with or proximity to others without being unduly distracted, (3) performing at a consistent pace without an

unreasonable number and length of rest periods, (4) accepting instructions and responding

appropriately to criticism from supervisors, (5) dealing with normal work stress, (6) interacting

appropriately with the general public, and (7) maintaining socially appropriate behavior.  AR 729-

30.  As part of the check-box form, Ms. Estell also noted that Plaintiff "experiences PTSD

symptoms which include but are not limited to: difficulty to focusing, concentrating, managing

anger and mood swings, persistent anxiety, flashbacks, intense psychological distress, heightened

arousal, fatigue, as well as frequent pain."  AR 731.

On March 15, 2017, Ms. Estell again assessed Plaintiff's level of impairment for work-

related activities.  Ms. Estell, again utilizing a check-box form, found that Plaintiff exhibited

"marked" impairments in 12 areas related to work-related mental abilities.  AR 1019.  The mental

impairment check-box questionnaire included two sections asking the reviewer to describe the

patient's impairments.  Ms. Estell answered, "Please refer back to previous mental impairment

questionnaire" in response to these sections.  AR 1020.

The ALJ properly discounted Ms. Estell's opinion.  First, Ms. Estell's opinion, like Ms.

Jones's opinion, was not supported by medical source opinions and the record.  State agency

physicians did not find that Plaintiff had the same limitations that Ms. Estell found, AR 137-39,

152-54, and the medical record does not indicate that Plaintiff's mental impairments were as

severe as Ms. Estell concluded, AR 563, 579, 626, 886-87.  Second, just as the ALJ determined,

Ms. Estell's opinion consisted of a "check box form, not supported with a narrative and not citing

objective findings."  AR 35, 727-31, 1019-21.  An "ALJ may permissibly reject check-off reports

that do not contain any explanation of the bases of their conclusions."  *Molina*, 674 F.3d at 1111

(internal alterations omitted).  Therefore, the ALJ provided germane reasons for rejecting the

opinion of Ms. Estell.

### d.  The ALJ Did Not Erroneously Rely on the Opinions of State Agency Physicians

Plaintiff's final argument that the ALJ improperly weighed the evidence contends that the

ALJ erroneously relied on State agency physicians whose opinions were allegedly inconsistent

30

with the record. Plaintiff's Mot. at 14-15. Plaintiff's argument, however, is dependent on finding that "the opinions of Dr. Hiatt, Ms. Estell, Ms. Jones, Ms. Childs, and Dr. Franklin[] should have been entitled to more weight." *Id.* at 15. Because the Court concludes that the ALJ did not err in weighing the other opinion evidence, the Court finds no reason to disturb the ALJ's decision to rely on the opinions of State agency physicians.

### 3. The ALJ Properly Concluded that From May 1, 2016 and Onward, Plaintiff Was Not Disabled For the Purposes of the Social Security Act

Plaintiff's final challenges to the ALJ's decision finding Plaintiff not disabled after May 1, 2016 consists of arguments that (1) the ALJ erred in concluding that Plaintiff did not meet Listings 12.04 or 12.06 at Step Three of the sequential evaluation process, and (2) substantial evidence does not support the ALJ's assessment of Plaintiff's residual functional capacity. *Id.* at 16-18. Again, Plaintiff's arguments are entirely dependent on finding that the ALJ erred in weighing the evidence. *Id.* at 16 ("Had the ALJ correctly assessed Mr. Lopriore's statements and correctly reviewed and weighed the medical evidence of record, he would have found sufficient evidence to support a finding that Mr. Lopriore meets or equals Listings 12.04 and/or 12.06 as originally alleged at the ALJ hearing."); *id.* at 17 ("Had the ALJ considered the overall record and appropriately weigh[ed] the opinion evidence, he would have determined that Mr. Lopriore's combination of exertional and non-exertional impairments prevent him from meeting the basic mental demands of unskilled work . . . ."). Because the ALJ did not err in weighing the evidence, the Court concludes that the ALJ properly concluded that Plaintiff was not disabled for the purposes of the Social Security Act for the period from May 1, 2016 and onward.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**


Dated: December 5, 2019

Case No. 18-CV-06970-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No. 18-CV-06970-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT